**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

UNITED STATES OF AMERICA,

v. CRIMINAL ACTION NO. 2:26-cr-00131
CRIMINAL ACTION NO. 2:26-cr-00014

ROSA SHILON-HERNANDEZ

## MEMORANDUM OPINION AND ORDER SUBSTITUTING COUNSEL

This case has been marked from the start by a failure of communication between Defendant Rosa Shilon-Hernandez and the system charged with prosecuting her. That failure has persisted between Ms. Shilon-Hernandez and her own appointed counsel. Three plea hearings have now ended without a plea, and on two of those occasions counsel's representations about her client's understanding or intent were contradicted by her client's own answers to the court.

In the interests of justice, and under 18 U.S.C. § 3006A(c), I **RELIEVE** current CJA counsel and **DIRECT** the appointment of new counsel. In doing so, I make no finding of bad faith or of ineffective assistance under *Strickland v. Washington*, 466 U.S. 668 (1984). Nothing in this order reflects on counsel's professional standing beyond this case. The question is not whether counsel has acted in good faith, but whether Ms. Shilon-Hernandez can receive the meaningful assistance the Sixth Amendment guarantees from the relationship as it now stands. On this record, I conclude that she cannot.

## I. BACKGROUND

Ms. Shilon-Hernandez speaks only Tzotzil, a Mayan language spoken by several hundred thousand people in the highlands of Chiapas, Mexico. She does not speak English, and she does

not meaningfully understand Spanish. Her formal schooling ended in the second or third grade, and she can only read and write "a little." [*United States v. Rosa Shilon-Hernandez*, Criminal Action No. 2:26-cr-00014, ECF No. 48, at 3][1]; [ECF No. 7, at 4]. Yet, until the second plea hearing held on April 16, 2026, every stage of this prosecution was conducted with her in Spanish.

Ms. Shilon-Hernandez worked at the Rio Grande Mexican Restaurant in Nitro, West Virginia, where her primary duty was to deliver chips and salsa to tables. [ECF No. 1, ¶ 8]. After Homeland Security Investigations served the restaurant with a Notice of Inspection and reviewed its employees' Form I-9 documentation, agents arrested her on January 16, 2026. [Indictment, ECF No. 52-1, at 10–11; 54-2, at 2–3]. On February 3, 2026, a grand jury returned a single-count Indictment charging her with using a false identification document in violation of 18 U.S.C. § 1546(b)(2). [Indictment, ECF No. 6]. Counsel was appointed at her initial appearance on February 5, 2026. [Indictment, ECF No. 15].

Three plea hearings have been held. Each ended without a plea.

**The first plea hearing.** At the first hearing on March 24, 2026, Ms. Shilon-Hernandez was provided a Spanish interpreter. Defense counsel told the court that Tzotzil was her client's first language and Spanish her second, and that she was "satisfied that [Ms. Shilon-Hernandez] understands what's happening today." [Indictment, ECF No. 48, at 4–5]. When I asked Ms. Shilon-Hernandez, through the Spanish interpreter, whether she understood what the Indictment charged, she answered, "I don't understand much Spanish. I don't know what it says." *Id.* at 5. When I laid out what the Government would have to prove, Defendant told me that she "didn't know whether

---

[1] For ease of reference, future ECF cites to the docket in Ms. Shilon-Hernandez's pending Indictment case, 2:26-cr-00014, will be referred to as "Indictment, ECF No. [ ]."

[her I-551] was false or not." *Id.* at 8–9. I continued the hearing until a proper interpreter could be located.

**The second plea hearing.** After two weeks of searching, the court located Dr. John B. Haviland, an anthropological linguist and professor at the University of California at San Diego. He is the only qualified interpreter the court has found who can simultaneously translate Tzotzil into English for the federal courts. [Indictment, ECF No. 38]. With Dr. Haviland interpreting, Ms. Shilon-Hernandez withdrew her motion to plead guilty during the second plea hearing held on April 16, 2026. [Indictment, ECF No. 40].

**The September 29 hearing.** The case then proceeded to a hearing on Defendant's Motion to Dismiss the Indictment and Suppress Statements and Derivative Evidence. [Indictment, ECF No. 52]. During that hearing, defense counsel sought to call Ms. Shilon-Hernandez to testify. [Indictment, ECF. No. 74, at 47]. Counsel proposed to call Ms. Shilon-Hernandez on the issue of whether she sufficiently understood the Spanish interpreter and other issues surrounding the development of this case from the time of her confrontation at the restaurant, her interview by government officials translated by a Spanish-speaking officer, and events following that. *Id.* at 47–48. The record did not reflect that Ms. Shilon-Hernandez received an interpreted advisement of her Fifth Amendment privilege against self-incrimination, or of the consequences of waiving it, before counsel sought to call her. Concerned that she had not been advised of the rights at stake, and that I would have to rely upon a single interpreter to reliably translate Ms. Shilon-Hernandez's testimony, I declined to permit the testimony and ended the hearing.

At the close of the hearing, I expressed my concern to counsel on the record. I told counsel that I was "uncomfortable with [her] decisions made in this case in a number of instances." *Id.* at 52. I noted that counsel had offered to plead Ms. Shilon-Hernandez guilty, only to later assert that

she did not understand the proceedings. *Id.* I then observed that counsel was now seeking "to call her as a witness in a hearing to prove she doesn't understand what's going on." *Id.* As I explained, that testimony would have exposed Ms. Shilon-Hernandez to cross-examination that could prove the opposite and, "as a consequence, prove the facts of the case that are alleged in the indictment." *Id.*

**The plea agreement and the third plea hearing.** The parties then reached a plea agreement. The Government agreed to dismiss the Indictment, and Ms. Shilon-Hernandez agreed to plead guilty to an Information charging her with conspiring to violate 8 U.S.C. § 1324a(a)(1)(A), in violation of 18 U.S.C. § 371. [ECF No. 1; ECF No. 8, at ¶ 3]. Defense counsel again represented that her client intended to plead guilty, and the third plea hearing was held on November 2, 2026.

Dr. Haviland again interpreted. During the factual-basis inquiry under Federal Rule of Criminal Procedure 11(b)(3), Ms. Shilon-Hernandez explained that she used the papers because her employer told her she had to in order to work there and get paid. [ECF No. 7, at 19 ("My boss didn't tell me actually what was in the paper, just told me that without the paper, I could not get paid … I didn't really know what was on the paper. I was just told that I needed to have it …")]. Critically, she did not state that she knew the documents were false, nor did she state that she knew the documents were illegal. *Id.* at 20 ("I didn't know it was against the law. I didn't know there was anything wrong with [the paper]. I was just told I needed it … [I]t was only after the paper that was given … to me that I saw that it was not my name and I didn't know that there was anything illegal about the paper."). As she answered, defense counsel could be heard prompting her toward a specific admission regarding her knowledge of the legality of the documents. I stopped the colloquy, heard from the Government on the evidence of Ms. Shilon-Hernandez's

knowledge, and found no adequate factual basis for the plea. I rejected the plea agreement. Trial is set for **December 1, 2026 at 8:30 a.m.**

## II. LEGAL STANDARD

### A. Substitution of Appointed Counsel

The Criminal Justice Act provides that "the court may, in the interests of justice, substitute one appointed counsel for another at any stage of the proceedings." 18 U.S.C. § 3006A(c). Whether substitution serves the interests of justice is "a context-specific inquiry." *Martel v. Clair*, 565 U.S. 648, 663 (2012). Because the decision turns so heavily on the facts, it is committed to the trial court's discretion and reviewed only for abuse of that discretion. *Id.* at 663–64.

The Sixth Amendment protects a defendant's right to counsel of her choice. *Powell v. Alabama*, 287 U.S. 45, 53 (1932). But that right is "circumscribed in several important respects." *Wheat v. United States*, 486 U.S. 153, 159 (1988). It is not absolute, and it may not be exercised in a way that obstructs judicial procedure or displaces the court's inherent power to control the administration of justice. *United States v. Mullen*, 32 F.3d 891, 895 (4th Cir. 1994). Most significantly here, "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006); *see also United States v. Smith*, 640 F.3d 580, 588 (4th Cir. 2011); *United States v. Richardson*, 227 F. Supp. 3d 577, 580 (E.D. Va. 2017).

Nor does an indigent defendant have a constitutional or statutory right to continuity of appointed counsel. "While the criminal defendant does of course retain some interest in continuous representation, courts are afforded considerable latitude in their decisions to replace appointed counsel, and may do so where a potential conflict of interest exists, and in the 'interests of justice,' among other circumstances." *United States v. Parker*, 469 F.3d 57, 61 (2d Cir. 2006) (internal

citations omitted); *see also United States v. Ledbetter*, 2015 WL 14093983, at *1–2 (S.D. Ohio Sept. 11, 2015); 3B Wright & Miller's Federal Practice & Procedure § 738 (4th ed.) ("The presiding judge has discretion and need not remove an appointed attorney on the request of the defendant."). A court may make that substitution on its own initiative absent a defendant's request. *United States v. Katz*, 296 F. Supp. 1404, 1406–08 (S.D.N.Y. 1969).

The court's discretion is informed by its own institutional interest in the integrity of its proceedings. Federal courts have "an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat*, 486 U.S. at 160. That interest extends beyond the trial itself to ensuring that any verdict or plea will withstand later review. The criminal process must also satisfy the "appearance of justice." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 571–72 (1980) (plurality opinion). A district court therefore acts within its discretion when it substitutes counsel to preserve the fairness, and the appearance of fairness, of the proceedings before it.

**B. The Right to Meaningful Assistance of Counsel**

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right … to have the Assistance of Counsel for [her] defense." U.S. Const. amend. VI. That right, "fundamental to our system of justice[,] is meant to assure fairness in the adversary criminal process." *United States v. Morrison*, 449 U.S. 361, 364 (1981). Its core is "the opportunity for a defendant to consult with an attorney and to have him investigate the case and prepare a defense for trial." *Kansas v. Ventris*, 556 U.S. 586, 590 (2009) (quoting *Michigan v. Harvey*, 494 U.S. 344, 348 (1990)).

The right is not satisfied by counsel's mere physical presence. It requires counsel capable of providing meaningful or effective assistance at all "critical" stages of the proceedings. *See Montejo v. Louisiana*, 556 U.S. 778, 786 (2009); *see also United States v. Taylor*, 54 F.4th 795,

802–03 (4th Cir. 2022) (citation omitted) ("The Sixth Amendment right to counsel guarantees not only the presence of a lawyer, but also the effective assistance of counsel."). And, "[i]t is self-evident that effective assistance of counsel necessarily requires the ability of a defendant to communicate with their counsel." *United States v. Escobedo-Molina*, 790 F. Supp. 3d 1283, 1290 (D.N.M. 2025). The period from arraignment to trial is "perhaps the most critical period of the proceedings, during which the accused requires the guiding hand of counsel[ ] if the guarantee is not to prove an empty right." *United States v. Wade*, 388 U.S. 218, 225 (1967) (internal citations and quotation marks omitted).

Congress has recognized the same principle. The Court Interpreters Act requires the presiding judicial officer to use a certified or otherwise qualified interpreter when a criminal defendant "speaks only or primarily a language other than the English language … so as to inhibit such party's comprehension of the proceedings or communication with counsel or the presiding judicial officer." 28 U.S.C. § 1827(d)(1). The statute thus treats communication with counsel as part of what adequate interpretation must protect. It reflects Congress's judgment that, for a defendant like Ms. Shilon-Hernandez, the right to counsel means little unless lawyer and client can understand each other.

## III. DISCUSSION

I exercise my discretion under § 3006A(c) because the record reflects a persistent breakdown in communication between Ms. Shilon-Hernandez and her counsel. That breakdown has repeatedly threatened her rights at critical stages, and the measures the court has already taken have not cured it.[2]

[2] Although this substitution arises on the court's own initiative rather than on a party's motion, I find it useful to be guided by the factors the Fourth Circuit applies when a defendant moves for substitution of counsel. *See United States v. Mullen*, 32 F.3d 891, 895 (4th Cir. 1994) (directing courts to consider "[t]imeliness of the motion; adequacy of the court's inquiry into the defendant's complaint; and whether the attorney/client conflict was so great that it had resulted

**A. The Record Reflects a Persistent Breakdown in Communication**

Twice, counsel has represented her client's understanding or intent to the court. Twice, Ms. Shilon-Hernandez's own answers have contradicted those representations.

The first occasion was the March 24 hearing. Counsel told me she was satisfied her client understood what was happening. Moments later, Ms. Shilon-Hernandez told me she did not understand Spanish and did not know what the Indictment said. [Indictment, ECF No. 48, at 4–5]. She then told me she did not know whether her card was false, which is a crucial element of the offense charged. *Id.* at 8–9. Counsel had appeared before the court to present a guilty plea her client did not understand and, it turned out, did not intend to enter. For the seven weeks between counsel's appointment and that hearing, lawyer and client shared no language.

I do not place the March 24 hearing entirely at counsel's feet. Federal agents, the prosecution, and the court at arraignment each dealt with Ms. Shilon-Hernandez before that hearing, and none of them made sure she meaningfully understood Spanish. But defense counsel occupies a unique role. She is the one actor whose entire function is to stand between her client and the system her client cannot navigate alone. When the communication between them breaks down so completely that counsel cannot accurately convey her client's intent at the most consequential decision in a criminal case, the Sixth Amendment guarantee is at serious risk. *See Wade*, 388 U.S. at 225.

The second occasion came after that problem was identified and after a qualified Tzotzil interpreter had been located. Counsel again represented that her client intended to plead guilty, this time under the plea agreement to a different charge. [ECF No. 8]. Yet at the November 2 hearing,

in total lack of communication preventing an adequate defense" (quoting *United States v. Gallop*, 838 F.2d 105, 108 (4th Cir. 1988))); *see also Smith*, 640 F.3d at 588.

Ms. Shilon-Hernandez again described facts that did not establish the knowledge element of the offense. She explained that she used the papers because her employer required them, not because she knew they were false or illegal. This same disconnect recurring with a qualified interpreter present suggests that the difficulty is not one of interpretation alone, but of the attorney-client relationship itself.

**B. The Breakdown Has Threatened Defendant's Rights at Critical Stages**

The consequences of this breakdown have not been abstract. Twice in recent months, it has placed Ms. Shilon-Hernandez's constitutional rights at risk.

First, when counsel sought to call Ms. Shilon-Hernandez to testify at the September 29 hearing, the record contained no indication that she had been advised, in a language she understands, of her Fifth Amendment privilege against self-incrimination or of the consequences of waiving it. Testimony at that hearing could potentially have been used against her, and could have exposed her to questioning about matters well beyond the motion. Whether to testify is among the most consequential decisions a defendant makes, and it is hers to make. A knowing decision requires an informed one, and the record gave me no assurance that she was informed.

Second, counsel's prompting at the November 2 hearing risked a plea that was neither knowing nor supported by an adequate factual basis. Rule 11 requires the court to determine that a plea is voluntary and that there is a factual basis for it. Fed. R. Crim. P. 11(b)(2)–(3). A plea built upon an admission that counsel coached from her client in open court, rather than one the defendant offered in her own words, satisfies neither requirement.

The stakes for Ms. Shilon-Hernandez are severe. A federal conviction can carry grave immigration consequences, including removal, ineligibility for relief she might otherwise seek, and barriers to any lawful return. Counsel must advise a noncitizen client about those consequences

before a plea. *Padilla v. Kentucky*, 559 U.S. 356, 374 (2010) (holding that "counsel must inform her client whether h[er] plea carries a risk of deportation"). That advice is only as good as the client's ability to understand it, and the record gives me no confidence that the relationship as it stands can provide that understanding.

### C. Lesser Measures Have Proven Inadequate

The court has not reached this conclusion lightly or quickly. After the March 24 hearing, I continued the proceedings so that a qualified Tzotzil interpreter could be located. [Indictment, ECF No. 38]. I allowed Dr. Haviland to be used by defense counsel for communication with her client due to the limited number of Tzotzil interpreters available. [Indictment, ECF No. 50, at 8–9]. I held a further hearing on September 29, with Dr. Haviland interpreting, to determine whether Ms. Shilon-Hernandez could meaningfully communicate with counsel and participate in her defense. [Indictment, ECF No. 74]. Despite these measures, the same problem has recurred at each critical juncture. Further continuances with the same counsel would not address it.

### D. The Timing Favors Substitution Now

This case is set for trial, but the trial has not begun. Substitution now gives new counsel time to establish a working relationship with Ms. Shilon-Hernandez, to communicate with her through a qualified interpreter, and to prepare a defense. It also protects the integrity of any eventual verdict or plea against a later claim that she was denied the meaningful assistance of counsel. Waiting until trial, or after it, would only compound the harm and the risk.

## IV. CONCLUSION

Upon consideration of the full record, I conclude that substitution of counsel is in the interests of justice. Accordingly, it is **ORDERED** that:

1. Olubunmi T. Kusimo-Frazier, Esq. is **RELIEVED** as counsel for Defendant Rosa Shilon-Hernandez.

2. The CJA Attorney Advisor is **DIRECTED** to appoint Gabriele Wohl, Esq. of Bowles Rice LLP as counsel for Defendant under 18 U.S.C. § 3006A forthwith.
3. Prior counsel is **DIRECTED** to deliver Defendant's complete file to successor counsel within **three (3)** days of the entry of this order, and to cooperate with successor counsel in the transition.
4. The court recognizes that new counsel has just been appointed. Trial is scheduled for **December 1, 2026, at 8:30 a.m.** unless a motion to continue establishing good cause is filed by either party.

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to the defendant and counsel, successor counsel upon appointment, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER: November 4, 2026

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE